**In the Matter of the Worker's Compensation Claim of Richard V. NIELSEN, an Employee of Ronstad & Olsen Construction.**

**Richard V. NIELSEN, Appellant (Employee–Claimant),**

**v.**

**STATE of Wyoming ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector–Defendant).**

**No. 90–246.**

Supreme Court of Wyoming.

Feb. 22, 1991.

Rehearing Denied March 27, 1991.

Randall T. Cox of Omohundro & Palmerlee, Buffalo, for appellant.

Joseph B. Meyer, Atty. Gen., Ron Arnold, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

The issue to be decided in this case is the date, for purposes of computing the amount of workers' compensation total disability benefits, on which appellant's injury was deemed to have occurred as contemplated by W.S. 27–14–403(c). The industrial accident occurred in 1963 and total disability was medically determined in 1988.[1]

1. The difference in potential benefit payment is stark. Specific totals are not clearly identified, but the 1963 amount is suggested to be $150 compared to the 1988 monthly benefit of some-

We will reverse and remand to the administrative hearing officer with directions that appellant be paid at the rates applicable in 1988 when the medical decision was made from which appellant became aware that he was 100% disabled.

Appellant, Richard V. Nielsen, suffered a compensable injury within the course and scope of his employment on June 29, 1963 when he fell from a bridge at a construction site. Nielsen received workers' compensation benefits until his case was closed on November 30, 1967. Eventually, Nielsen returned to work as a truck driver from 1977 until November 20, 1986. Nielsen also received some additional benefits for treatments in 1982. In November 1986, he experienced numbness in his right side and was no longer able to continue his work. This problem was corrected through back surgery in December 1986. He then experienced numbness in his left side and a second back surgery was performed in December 1987. All of these medical procedures were paid by workers' compensation. By letter dated May 2, 1988, an examining physician reported that Nielsen was 100% disabled and could perform no work, even work of a sedentary nature. On December 5, 1988, Nielsen submitted his claim for permanent total disability benefits. The claim was based upon a compensable injury date when his 100% disability was established by medical authority in the May 2, 1988 medical report.

There are no disputed facts in this matter. The only issue to be decided is whether Nielsen will be paid his permanent total disability benefits at rates applicable at the time of the original injury (1963), at the time the 1963 injury manifested itself in pain and numbness that prevented Nielsen from continuing his employment (1986), or at the time Nielsen was determined to be 100% disabled and applied for benefits (1988). After Workers' Compensation objection and resulting hearing, the administrative hearing officer determined that Nielsen should be paid at the rates applicable at the time of the original injury (1963). Nielsen petitioned for review in the district court and the district court certified the matter to this court for resolution pursuant to W.R.A.P. 12.09.

Nielsen poses this statement of the issues:

I. Whether the Independent Hearing Officer's Findings of Fact are supported by substantial evidence:

A. Whether the finding that the employee suffered the pertinent "compensable injury," to wit, Permanent Total Disability, on June 29, 1963, is supported by substantial evidence.

B. Whether the finding that the employee's "disability was evident and became a fact prior to the changes in the compensation rates" is supported by substantial evidence.

II. Whether the Independent Hearing Officer's Conclusions of Law and Order are in conformity with law:

C. Whether the Conclusions of Law and Order holding that the employee is limited to benefits based upon the 1963 statutes in effect at the time of the original industrial accident, when the employee's compensable injury of Permanent Total Disability occurred in 1986 or 1988, is in accordance with law or is an error of law.

The Workers' Compensation Division (state fund) counters with this statement of the issues:

I. Whether the administrative hearing examiner's decision is supported by substantial evidence.

II. Whether appellant is entitled to collect permanent total disability benefits pursuant to W.S. § 27–14–406 (1986) or under W.S. § 27–85 (1963).

Surprisingly, the parties have posed the issues in terms of the existence of substantial evidence. Resolution of this case turns only on our construction of W.S. 27–14–403(c) which became effective on July 1,

thing more than $1,000 per month or approximate total payments of $9,000 versus nearly $62,000.

1987. Wyo.Sess.Laws ch. 3, § 3 (1986 Sp. Sess.). W.S. 27–14–403(c) provides in part:

All awards stated in subsection (a) of this section except awards under subsections (b), (e)(ii), (iv) and (v) and (h)(ii) of this section shall be paid monthly at the rates prescribed by this subsection. For permanent partial and permanent total disability or death under paragraphs (a)(ii) through (iv) of this section, the award shall be paid monthly at the rate of two-thirds (⅔) of the statewide average monthly wage for the twelve (12) month period immediately preceding the quarterly period in which the injury occurred as determined pursuant to W.S. 27–14–802.

Our task is to ascertain the meaning of the statute with regard to when an injury is deemed to have occurred. This decision on appeal addresses the construction of a statute and becomes a decision as a matter of law for which we apply a plenary review. *Union Pacific R. Co. v. Wyoming State Bd. of Equalization*, 802 P.2d 856 (Wyo. 1990). This appellate review presents neither factual conflict nor a sufficiency of the evidence issue. *Matter of Patch*, 798 P.2d 839 (Wyo.1990).

While it is true a claimant has the burden of proving the actual time of disability and its cause, *Bemis v. Texaco, Inc.*, 400 P.2d 529, 531, *reh'g denied* 401 P.2d 708 (Wyo.1965), for purposes of establishing the date of occurrence of an injury to ascertain the time from which the statute of limitations begins to run is a legal question and not one of fact. *In the Matter of Barnes*, 587 P.2d 214, 219 (Wyo.1978); *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 374 (Iowa 1985). We further note that rule in this instance, because determining the date of the occurrence of injury, for purposes of ascertaining the applicable compensation schedule, is likewise a question of law. The state fund argues for a construction of W.S. 27–14–403(c) which equates the "accident" with the "occurrence of the injury," so as to tie the schedule of benefits only to the accident and not to the occurrence of the injury. In many cases, there may be coincidence of accident and injury. 1B Larson, The Law of Workmen's Compensation, § 39 (1987). However, we have held that "accident" and "injury" are not identical in meaning. *In the Matter of Barnes*, 587 P.2d at 218. Under the undisputed facts which govern this matter, Nielsen's disabling injury is clearly one that was not coincidental with the accident.

In *Bemis*, 400 P.2d at 530–31, we held:

Nevertheless, in instances where employment has continued until the time of actual disability, we must hold that, where disability becomes a fact after a change in compensation rates, such changes have become an integral part of the employment status.

In that case, we concluded that the applicable compensation schedule was that which was in effect in 1963 when Bemis' disability became apparent, rather than that schedule which was in effect at the time of the accident in 1954. We iterated this principle in *In the Matter of Barnes*, 587 P.2d at 219. It has been, and continues to be, a governing rule in workers' compensation cases nationwide. E.g., *Prescott v. United States*, 523 F.Supp. 918, 926 (D.Nev.1981), *aff'd* 731 F.2d 1388 (9th Cir.1984) (relying in part upon *Bemis*); *State Compensation Ins. Fund v. Industrial Com'n of State*, 724 P.2d 679, 680 (Colo.App.1986) (death benefits paid per schedule in effect at time of death, not accident); *State Indus. Ins. System v. Harrison*, 103 Nev. 543, 746 P.2d 1095, 1098 (1987) (relying in part upon *In the Matter of Barnes*); and *Liberty Mut. Ins. Co. v. Starnes*, 563 S.W.2d 178, 179 (Tenn.1978) (relying in part upon *Bemis*). Moreover, we have repeatedly held that a single accident may give rise to more than one compensable injury. *Matter of Krause*, 803 P.2d 81 (Wyo.1990) (and cases cited therein).

The determination of when an injury of a gradual nature has occurred is not always a simple one. Professor Larson identifies two options: (1) injury has occurred the first moment the pain or illness makes it impossible to work; or (2) the date on which the disabling accident finally prevents the claimant from performing his work. 1B Larson, *supra*, at 7–350.28.

Which of these options is applied will make a significant difference to the claimant. If we were to adopt the position of the state fund and the decision of the administrative hearing officer, Nielsen would be compensated in 1988 with 1963 dollars—a result only one step above no compensation at all—and, as we search for the most prudent and accurate construction of W.S. 27–14–403(c), we are, needless to say, mindful of our often repeated rule that workers' compensation statutes are to be liberally construed to effectuate their beneficent purposes and, if it is rationally possible, to construe them so that industry, rather than the injured workman, bears the burden of industrial accidents. *Lehman v. State ex rel. Wyoming Workers' Compensation Div.*, 752 P.2d 422, 425 (Wyo.1988). Also, whether Nielsen receives the average wage prevalent in 1986 or 1988 will make a difference in dollars and cents, even if it is a relatively modest amount, of special meaning to a working man who no longer has the capacity to do work of any sort.

In *McKeever Custom Cabinets*, 379 N.W.2d at 374 (and cases cited therein), the Iowa Supreme Court employed the rule that injury occurs and the employee is disabled when he can no longer work because of pain or physical inability. Application of this rule, to the facts of this case, would mean that Nielsen would be compensated at 1986 rates because Nielsen left his job in November 1986 because his condition at that time drove him to quit his employment.

In *Coy v. Dover Corp./Norris Div.*, 773 P.2d 745, 747 (Okl.1989), the Oklahoma Supreme Court held that cumulative injury cases (the injury at issue was hearing loss) were governed by a two-pronged rule. The court held that such injuries occur when: (1) the worker is aware he has an injury; and (2) is aware that the injury is causally related to the working environment. Application of this rule could support Nielsen's claim for benefits at the 1988 rates. In *Harrison*, 746 P.2d 1095, the Nevada Supreme Court treated the amputation of a leg, which occurred eight years after that leg was broken in an industrial accident, as a new injury. Although in that case the

total disability was readily evident at the time the operation was performed, because there was no hiatus between the operation and the awareness of disability, this rule also tends to support Nielsen's claim for benefits at the 1988 rate.

In *In the Matter of Barnes*, 587 P.2d at 219, we held that the compensable injury occurred when Barnes was operated on some nine years after the accident causing the injury for purposes of determining the date from which the statute of limitations would run. While this ruling is instructive, it did not respond to the question posed in this case and so cannot be treated as controlling.

Each of the rules cited above have some merit, and each is useful for analyzing cases such as Nielsen's. It is apparent that no one black-letter rule will suffice to answer the question posed herein for all future such cases. We shall set down the perimeters of the rule, but it will be necessary to leave room for its maturation because there are, no doubt, an infinite variety of circumstances which no one hard and fast rule can accommodate. Under the circumstances presented here, we will employ what is, in essence, the Oklahoma rule cited above. Nielsen may have known that his 1963 injury was the source of his medical difficulties as early as November 1986, but it was not until May 1988, when so informed by his examining physician, that he became aware that his injury (total disability) had occurred. The significance of the operations in this case would only have been to trigger the running of the statute of limitations for filing a claim for those operations. When Nielsen left his work in November 1986 to receive treatment, he could not have filed a claim for total disability because he didn't have knowledge, nor apparently did the attending physicians, that he was 100% disabled. It was likely contemplated that Nielsen would benefit enough from the surgeries to return to be a functional worker of some sort. Unfortunately, the operations did not produce that result.

Thus, we hold that, pursuant to W.S. 27–14–403(c), Nielsen's injury occurred

when the physician's report was communicated by a mailing of the report to the covered worker on May 2, 1988. That date became his stated date of injury by determination and discovery which was recited in his December 5, 1988 claim from which the issues of this appeal were developed.

Reversed and remanded to the administrative hearing officer for further proceeding consistent with this opinion.